## McELROY *v.* THE STATE.

1. The charge on the subject of the recent possession, not satisfactorily explained, of goods stolen from the house at the time the alleged burglary was committed, was not open to the criticism urged against it.

2. Generally where the prosecution relies exclusively upon circumstantial evidence for a conviction, it is the duty of the judge not only to charge upon the law of reasonable doubt, but also, whether requested or not, to state to the jury the rule of law applicable in such cases, to the effect that the evidence must connect the accused with the perpetration of the alleged offense, and must not only be consistent with his guilt but inconsistent with every other reasonable hypothesis. But when a burglary is proved and the defendant is shown to have been in the recent possession of goods stolen from the house at the time the alleged burglary was committed, and there is also evidence tending to show an implied admission by the accused of his guilt; and the jury are properly instructed as to the weight they are authorized to give to his explanation of his recent posession of the stolen goods, and as to the law touching reasonable doubt in a criminal prosecution, a new trial will not be ordered merely because of the failure of the judge to charge as to what weight the law attaches to evidence of a purely circumstantial nature.

Argued February 20,—Decided March 22, 1906.

Indictment for burglary. Before Judge Roan. Fulton superior court. January 13, 1906.

*S. C. Crane,* for plaintiff in error.

*C. D. Hill, solicitor-general,* contra.

EVANS, J. The defendant was convicted of burglary, and excepts to the overruling of his motion for a new trial. The evidence disclosed that the "pressing-club" house of one George Riley was broken into and various articles of apparel were stolen therefrom. The entrance was effected by breaking a pane of glass, making a hole large enough to enable a man to enter. On the night after the commission of the burglary, the defendant was arrested, and at the time had on his person two of the garments which had been taken from the house. He was asked by the arresting officer where he got these garments, and replied that he purchased them from a boy named Oscar Wyatt, giving at the same time a minute description of the person from whom he claimed to have bought the garments. From this description furnished the officer, he was able to identify Wyatt, who was arrested the next night. The defendant was confronted with Wyatt, and the latter was asked, in the presence of the defendant, why he sold these garments to the defendant. Wyatt said he did not, and thereupon the defendant said: "That is not

the boy I bought them from, anyhow; I bought them from another boy." Wyatt then said to the defendant: "You know you broke that glass and you got them clothes, and you hid the clothes up behind that bar, and you got the overcoat." The defendant made no reply to Wyatt, but after they were separated and placed in different cells at the station-house, immediately after this conversation occurred, the defendant remarked to the officer: "I will kill anybody that swears against me." The officer subsequently went to the bar designated by Wyatt, and there found the clothing referred to by him. The evidence further disclosed that, on the night after the burglary, the defendant sold a coat and a pair of pants for a small sum of money to a man who was working at a certain bar, these garments being other than those which the defendant was wearing when arrested. The clothing was positively identified as part of the apparel which had been stolen from the premises burglariously entered. In his statement to the jury the defendant gave a rather confused account concerning his possession of the stolen property, claiming that he bought the clothing from Oscar Wyatt in the presence of several persons, none of whom were present at the trial.

1. The first complaint in the motion for a new trial is based upon the following instruction of the court: "Now I charge you, gentlemen, that if it be shown by the evidence in this case, beyond a reasonable doubt, that some one did break and enter the pressing-club house of George Riley, in this county and about the time charged in this bill of indictment, and it was his place of business, and you believe that there was valuable goods contained in that house at the time, and that this breaking and entering was done with intent to steal therefrom goods of the value as here charged and as here described; and if it be shown, gentlemen, that recently thereafter . . this defendant was found in possession of those goods or a portion thereof so stolen from that house, if there were any stolen, then, gentlemen, that would be a circumstance from which you would be authorized to find him guilty of the offense of burglary, unless he made an explanation of his possession of those goods consistent with his innocence, in your opinion—of all of which you are to be the judges." The alleged error is in the intimation of an opinion that in case the jury found a burglary had been committed, there must have been more than one person engaged in the commission of the offense; and because the jury were told they could presume the de-

fendant's guilt from his possession of a portion of the stolen property, unless his explanation of such possession satisfied the jury beyond a reasonable doubt of his innocence. On the trial of the case it was admitted by the solicitor-general that "Oscar Wyatt was indicted jointly with the defendant, and appeared in court and tendered and filed a plea of guilty for the same burglary and larceny as set out in the indictment in the case." But nothing in the language employed by the court could fairly be construed into an assumption that the defendant was one of two or more parties who broke and entered the house from which the goods were stolen. It was the theory of the State that both Wyatt and the defendant were guilty of the burglary. Wyatt had pleaded guilty, and his guilt was established; the defendant's guilt or innocence was the subject-matter of the investigation, and the charge was adjusted to the evidence. It amounted to no more than an instruction that if the jury should find that the defendant and the other person whose guilt was admitted did break and enter the building and steal therefrom the goods described in the indictment, then the offense would be burglary; and if the jury should find that some of the goods stolen from the house were found in the recent possession of the defendant, they should consider this circumstance in passing upon his guilt or innocence, and would be authorized to find him guilty of the offense charged against him unless he made such an explanation of his possession as was, in their opinion, consistent with his innocence. As to the criticism that the charge of the court placed upon the accused the burden of establishing his innocence beyond a reasonable doubt, the language of the charge itself is a refutation of the strained and unwarranted construction put upon it.

2. The court did not charge the jury on the subject of circumstantial evidence, and the omission to do so is made a ground of the motion for a new trial. Generally, in cases where the prosecution relies exclusively upon circumstantial evidence for a conviction, it is the duty of the judge not only to charge upon the law of reasonable doubt, but also, whether so requested or not, to state to the jury the rule of law applicable in such cases, to the effect that the evidence must connect the accused with the perpetration of the alleged offense, and must not only be consistent with his guilt but inconsistent with every other reasonable hypothesis. *Hamilton* v. *State,* 96 *Ga.* 301. But in the present case, the evidence upon which the State

relied was not entirely circumstantial in its nature. When the accused was confronted with Wyatt, the former was directly charged by Wyatt with having broken the window, stolen the clothes, getting the overcoat, and hiding the clothing in a barroom. Notwithstanding this criminal charge was made against the accused within his hearing and in his immediate presence, he made no reply to the accusation. Shortly afterwards he remarked to the arresting officer: "I will kill anybody that swears against me." Apparently, therefore, the accused had in mind what Wyatt had just said to him, and understood that he was charged with having committed a burglary, and would be brought to trial. Nothing had transpired while he was with the officer, after the interview with Wyatt, to evoke this threat against anyone who might appear against him as a witness. The Penal Code, § 1003, declares that "Acquiescence, or silence, when the circumstances require an answer or denial, or other conduct, may amount to an admission." This burglary had but recently been committed, and the defendant was arrested and called on to account for his possession of garments which he was wearing and which had been stolen from the house burglariously entered through a window. He told the arresting officer that he had purchased the garments from a negro boy whose name was Oscar Wyatt. When Wyatt and the accused were brought together in the station-house, Wyatt denied that he sold the clothing to the accused, and positively charged him with having committed the burglary. The circumstances were such that if the defendant had honestly come into possession of the stolen clothing he was then wearing, he would most probably have denied the imputation that he himself was the burglar and the thief. Instead of making any denial, he remained silent. The jury were authorized, under these circumstances, to construe his silence as an implied admission of the charge made against him. *Drumright* v. *State*, 29 *Ga.* 431; *Davis* v. *State*, 114 *Ga.* 109. While his silence could not properly be styled a confession, still it amounted to an implied admission of guilt which made the case one not wholly dependent upon circumstantial evidence.

It was decided in *Mangham* v. *State*, 87 *Ga.* 549, that "Recent possession, not satisfactorily explained, of goods stolen from the house at the time the alleged burglary was committed, may be sufficient as a basis of conviction of burglary, where the burglary has been established and the jury believe from all the evidence beyond

a reasonable doubt that the accused is the guilty party." Where the evidence relied on consists solely of proof of the burglary and the recent and unexplained possession of goods taken from the house at the time of the burglarious entry, the court should always instruct the jury, without formal request, under what circumstances a conviction upon circumstantial evidence is warranted. But when there is evidence tending to show an implied admission by the accused of his guilt, and the jury are properly instructed as to the weight they are authorized to give to his explanation of his recent possession of the stolen goods, and as to the law touching reasonable doubt in a criminal prosecution, a new trial will not be ordered merely because of the failure of the judge to charge as to what weight the law attaches to evidence of a purely circumstantial nature. *Jones* v. *State,* 105 *Ga.* 649. The evidence against the accused in the present case was sufficient to authorize the jury to infer his guilt, and his conviction should be allowed to stand.

*Judgment affirmed. All the Justices concur.*